UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN P. EAGLEY and MELISSA EAGLEY,

                    Plaintiffs,

        v.

STATE FARM INSURANCE COMPANY,

               Defendant.

_____

<u>DECISION & ORDER</u>

13-CV-6653P

## PRELIMINARY STATEMENT

        Plaintiffs Steven P. Eagley and Melissa Eagley ("plaintiffs") sued defendant State

Farm Insurance Company ("State Farm") in New York Supreme Court for breach of contract,

alleging that State Farm breached the homeowner's insurance policy that it had issued to

plaintiffs by failing to pay covered losses caused by a fire at their residence.  (Docket # 1-1).

Pursuant to 28 U.S.C. §§ 1332(a) and 1441, State Farm removed the action to this Court,

invoking diversity jurisdiction.  (Docket # 1).  State Farm thereafter filed its answer, which

asserts various affirmative defenses, including fraud and breach of the policy's cooperation

provision.  (Docket ## 1, 5).  The parties have consented to the disposition of this case by a

United States magistrate judge, pursuant to 28 U.S.C. § 636(c).  (Docket # 7).  Currently pending

before the Court is State Farm's motion for summary judgment.  (Docket # 16).

## STATE FARM'S MOTION FOR SUMMARY JUDGMENT

        State Farm seeks summary judgment dismissing the complaint in its entirety.

(*Id.*).  First, State Farm contends that plaintiffs breached the cooperation provision of the

insurance policy by failing to answer certain questions during their examinations under oath ("EUOs"), to subscribe to their EUOs, and to produce records and documents requested by State Farm. (Docket # 16-10 at 4-12). According to State Farm, the duty to cooperate is a condition precedent to coverage, and each of the alleged breaches is a complete defense to plaintiffs' claim for payment under the policy. (*Id.*). Additionally, State Farm maintains that plaintiffs breached the policy by failing to timely submit compliant proof of loss forms for the contents and additional living expenses coverage under the policy. (*Id.* at 14-18). Finally, State Farm moves to strike plaintiffs' expert reports on the grounds that they are untimely. (*Id.* at 12-14).

Plaintiffs counter that genuine issues of material fact preclude summary judgment. (Docket # 22-15 at 3-5). First, they contend that the materiality of the questions posed during their EUOs is a question of fact, precluding this Court from concluding that their refusal to answer constituted willful non-compliance with the policy's cooperation provision. (*Id.*). Second, they assert that they subscribed to the transcripts on January 27, 2013. (Docket ## 22-1; 22-14 at ¶¶ 22-23). Third, they maintain that the proof of loss forms that they submitted substantially complied with the terms of the policy. (Docket # 22-15 at 3-5). Fourth, with respect to the failure to produce documents, they contend that the terms of the policy did not obligate them to provide State Farm with their expert reports. (*Id.*). Finally, they maintain that State Farm waived their purported noncompliance by failing to disclaim in a timely manner after their alleged noncompliance.[1] (*Id.*).

---

[1] Plaintiffs also maintain that the term "accidental" should be stricken from the policy pursuant to Section 3404 of the New York Insurance Law. (Docket # 22-15 at 5). As an initial matter, plaintiffs have not affirmatively asserted their right to summary judgment on this issue because they did not cross-move for such relief. In any event, whether the term "accidental" is properly included in the policy is not relevant to the issues currently pending before this Court.

A.      **Factual Background**

The following facts are undisputed unless otherwise noted.  On May 14, 2010, a fire caused the total loss of plaintiffs' residence (the "2010 fire").  (Docket ## 16-12 at ¶ 9; 22-14 at ¶ 9; 24-5 at ¶ 9).  At the time, plaintiffs were insured under a homeowners insurance policy issued by State Farm.  (*Id.*).  They submitted a claim pursuant to that policy, and State Farm paid the claim.  (*Id.*).

On October 5, 2011, plaintiffs notified State Farm that they had sustained another residential fire (the "2011 fire").  (Docket ## 16-12 at ¶ 2; 22-14 at ¶ 2; 24-5 at ¶ 2).  At the time of the 2011 fire, plaintiffs were insured under a homeowners policy issued by State Farm.[2] (Docket ## 16-12 at ¶ 3; 22-14 at ¶ 3; 24-5 at ¶ 3).  The policy provided, in relevant part:

**SECTION I – CONDITIONS**

2.      **Your Duties After Loss.**  After a loss to which this insurance may apply, you shall see that the following duties are performed:

      d.      as often as we reasonably require:

           (3)      submit to and subscribe, while not in the presence of any other **insured;**

               (b)      examinations under oath;

               *          *          *

6.      **Suit Against Us.**  No action shall be brought unless there has been compliance with the policy provisions . . . .

*See* (Docket ## 16-3 at 23-24; 22-11 at 17-18).

---

[2]  Both parties maintain that they have attached a certified copy of the policy to the motion papers submitted to the Court, yet they apparently disagree as to which copy is the correct copy of the policy.  (Docket ## 16-12 at ¶ 3; 22-14 at ¶ 3; 24-5 at ¶ 3).  The parties have not identified any differences between the copies, however, and this Court has not discerned any.  In any event, the portions of the policy relevant to this decision are contained in each of the policy copies submitted to the Court.

After receiving notice of the 2011 claim, State Farm commenced an investigation of the claim and began evaluating plaintiffs' coverage for the claim. (Docket ## 16-12 at ¶ 4; 22-14 at ¶ 4; 24-5 at ¶ 4). In connection with their investigation of the 2011 fire, State Farm conducted EUOs of both Melissa and Steven Eagley on two separate days, March 19, 2012 and November 19, 2012. (Docket ## 16-12 at ¶ 16; 22-14 at ¶ 16; 24-5 at ¶ 16).

During the March 19, 2012 EUO, Steven and Melissa Eagley both testified that after the 2011 fire they lived at Melissa Eagley's aunt's house for approximately one month. (Docket ## 16-7 at 11; 16-8 at 39). After that, they began renting a house located at 7 Pleasant Street, Clifton Springs, New York for a monthly fee. (Docket ## 16-7 at 12; 16-8 at 39). Melissa Eagley testified that the owner of the house was a friend of her mother's who lived in Arizona and with whom they had a lease agreement (the "owner"). (Docket # 16-8 at 39-40). According to Melissa, they agreed to pay the owner $1,200 per month, an amount which included utilities. (*Id.* at 39). Melissa testified that the owner told them that they did not have to make payment until after State Farm paid the insurance claim. (*Id.*). Melissa testified that they had stayed at the same residence after the 2010 fire as well. (*Id.*).

During the November 19, 2012 EUO, Steven Eagley testified that Melissa had been arrested and charged with insurance fraud the previous week arising out of their 2010 insurance claim, and that he too had been arrested in connection with that "incident." (Docket # 16-7 at 29, 31). Steven testified that he and his family continued to live at the 7 Pleasant Street residence, although he was unsure whether they had a written lease agreement. (*Id.* at 38). According to Steven, the owner had not yet charged them for their use of the house because the insurance claim had not been paid, but he believed that there was an agreement concerning how much they would pay. (*Id.*). He testified that he was unsure of the agreed-upon amount. (*Id.*).

4

Steven testified that they had lived at the 7 Pleasant Street residence following the 2010 fire as well, but he did not know whether there was a written lease agreement with the owner. (*Id.* at 39). Counsel for State Farm asked Steven whether the owner had charged them for their stay in the residence following the 2010 fire. (*Id.*). Plaintiffs' counsel objected to the question, contending that questions pertaining to the prior claim were not relevant to the investigation of the 2011 fire claim and were the subject of a pending criminal investigation. (*Id.*). Counsel for State Farm responded that the issue of prior claims was relevant, especially with respect to the claim for additional living expenses. (*Id.*). Following a brief exchange, plaintiffs' counsel stated, "I'm not going to have him answer questions that – it's the subject of a current criminal investigation." (*Id.*). Counsel for State Farm responded:

> Of course, I just need to warn you guys that I believe that State Farm has a reason and a good-faith basis to ask these questions to determine, among other things, the reasonableness of the ALE [additional living expenses.] Whether or not ALE was charged in the past, whether or not it's being charged now, whether or not there was any insurance fraud committed with respect to the prior claim with respect to the ALE, and so I have to continue to ask these questions.

(*Id.*).

Plaintiffs' counsel reiterated his position that information concerning the prior claim was not relevant. (*Id.*). Counsel for State Farm replied:

> I just need to continue with the warning to say that, because I believe there's a good-faith basis to ask the questions, should you elect not to answer the questions, I just have to put the reservation of rights to let you know that your claim could be denied for that reason. It's up to you.

(*Id.* at 39-40). Counsel for State Farm then asked approximately fourteen questions relating to whether and how payments were made to the owner for the period during which the Eagley family lived at 7 Pleasant Street following the 2010 fire. (*Id.* at 40-41). After each of the

questions, plaintiffs' counsel instructed Steven not to answer, and he did not answer the questions.  (*Id.*).

      A similar exchange occurred during Melissa Eagley's November 19, 2012 EUO. (Docket # 16-8).  Counsel for State Farm questioned Melissa about her agreement with the owner for their post-2011 fire stay at 7 Pleasant Street, and she testified that they had a written lease agreement to pay $1,200 monthly rent, but the rent had not yet been paid because the owner "is just waiting for reimbursement from State Farm so we can reimburse her."  (*Id.* at 58). Following that questioning, counsel for State Farm indicated his intention to inquire into the rental of the property after the 2010 fire, stating that he believed the questions were relevant.  (*Id.* at 59).  He advised Melissa:

> Your attorney had objected at the time I asked your husband these questions, and I presume . . . his objection will remain.  And, of course, I believe differently.  I think they're questions that need to be answered and you've made your objections.  I take it that we can just kind of cut and past the colloquy from the first session with Mr. Eagley and cut and paste it over to this one.  But I still have to run through the questions, and I presume his opinion has not changed and he will direct you not to answer them.

(*Id.*).  The transcript reflects that Melissa responded, "Yep."  (*Id.*).

      Counsel for State Farm asked Melissa approximately fourteen questions relating to whether and how payments were made to the owner for the period during which the Eagley family lived at 7 Pleasant Street after the 2010 fire.  (*Id.* at 60).  Plaintiffs' counsel directed Melissa not to answer each of the questions, and she adhered to her counsel's direction.  (*Id.*).

      Following the November 2012 EUOs, counsel for State Farm sent a letter to plaintiffs' counsel dated December 21, 2012, enclosing the transcripts from the March and November 2012 EUOs, along with errata sheets.  (Docket # 16-9 at 2).  The letter advised that "[t]he signature pages at the end of each transcript and each correction sheet utilized must then

be signed and notarized" and warned that "failure to sign and return the [EUO] transcripts may result in a loss of rights under the . . . policy." (*Id.*).  On January 21, 2013, defense counsel sent another letter to plaintiffs' counsel reminding him that "[r]esponses remain outstanding" to the December 21 letter.  (*Id.* at 4).  Plaintiffs did not return signed subscriptions to State Farm or its counsel.  (Docket ## 16-12 at ¶ 23; 22-14 at ¶ 23).  The first time defense counsel saw signed subscriptions was when they were filed as an exhibit to plaintiffs' opposition to State Farm's pending summary judgment motion.  (Docket # 24 at ¶ 7).  The subscriptions bear notarized signatures of both plaintiffs dated January 27, 2013.[3]  (Docket # 22-1).

After completing its investigation of the 2011 fire, State Farm concluded that the cause of the fire was incendiary.  (Docket ## 16-12 at ¶¶ 8, 13; 22-14 at ¶¶ 8, 13; 24-5 at ¶¶ 8, 13).  Plaintiffs dispute State Farm's conclusion.  (*Id.*).  By letter to plaintiffs dated May 14, 2013, State Farm disclaimed coverage for the 2011 fire.  (Docket ## 16-12 at ¶¶ 8, 13; 16-6 at 19-22; 22-14 at ¶¶ 8, 13; 24-5 at ¶¶ 8, 13).  Plaintiffs maintain that the disclaimer letter was untimely; State Farm disagrees.  (Docket ## 22-14 at ¶ 13; 24-5 at ¶ 13).

On April 15, 2013, Melissa Eagley was indicted on state criminal charges of arson, insurance fraud, and grand larceny in connection with plaintiffs' insurance claims relating to both the 2010 and 2011 fires.  (Docket ## 16-12 at ¶ 10; 22-14 at ¶ 10; 24-5 at ¶ 10).  On January 16, 2014, she pleaded guilty to third degree insurance fraud in connection with her claim for additional living expenses arising out of the 2010 fire.  (Docket ## 16-12 at ¶ 11; 22-14 at ¶ 11; 24-5 at ¶ 11).  Despite the plea, plaintiffs assert, without citation to admissible evidence, that Melissa made no misrepresentation in connection with the 2010 additional living expenses

---

[3]  The month and date on the subscriptions is handwritten.  The year is typed.  On Steven's, the typewritten year has been changed by hand from 2012 to 2013.  On Melissa's, the year remains 2012, although the Court assumes, for purposes of this motion, that she signed it before the notary on the same day as her husband. Obviously, she could not have signed it on January 27, 2012, which was before the examinations had occurred.

claim and that her guilty plea was motivated by convenience and financial hardship. (Docket ## 22-14 at ¶ 11; 24-5 at ¶ 11). Steven Eagley also pleaded guilty to insurance fraud in the third degree in connection with the claim for additional living expenses arising out of the 2010 fire. (Docket ## 16-12 at ¶ 12; 22-14 at ¶ 12; 24-5 at ¶ 12). Plaintiffs likewise maintain that his plea was motivated by convenience and financial hardship. (Docket ## 22-14 at ¶ 12; 24-5 at ¶ 12). Melissa was acquitted on the arson charge after a jury trial. (Docket ## 22-14 at ¶ 11; 24-5 at ¶ 11).

Copies of two lease agreements for 7 Pleasant Street are included in the record before the Court on the pending motion. (Docket ## 22-3 at 19-23; 24-3 at 45-49). Both documents are entitled, "Lease Agreement" and identify the owner of the property as the "Landlord," "Steven and Melissa Eagley & Family" as the "Tenant," and 7 Pleasant Street, Clifton Springs, New York as the "Leased Premises." (*Id.*). Both leases provide that the term is "[m]onth to [m]onth" and that the "[m]onthly [r]ent" is $1,200.00. (*Id.*). The terms of the agreements are virtually identical; the only differences are the beginning dates (May 2010 for the first lease and November 2011 for the second) and the fact that the first reflects a security deposit of $1,200.00, while the second reflects no security deposit. (*Id.*). Both agreements contain the same provision as to "Payment of Rent":

> Tenant shall pay rent, together with any added rent, on the first day of each month. If the rent is not received by Landlord on or before the 3rd day of the month by 7:00 p.m., then Tenant shall be subject to a late penalty in the amount of $15.00. Said late penalty shall be added rent. Nothing in this paragraph shall prevent Landlord from asserting any other or different rights as set forth in this Lease.

(*Id.*). The May 2010 lease is signed by Melissa and the owner; the November 2011 lease is unsigned. (*Id.*).

In connection with the 2011 fire, plaintiffs submitted a sworn proof of loss form in the amount of $15,000 for coverage for "additional living expenses."  (Docket # 22-6).  They also submitted sworn proof of lost forms for "Building" and "Contents" coverage.  (*Id.*).

A.   **Discussion**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reaching this determination, the court must assess whether there are any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).  A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d at 97.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the non-moving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts.  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *cert. denied*, 502 U.S. 849 (1991).  The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in

Rule 56 . . . , that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

> As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. . . . [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## 1.  Compliance with the Cooperation Provision

Under New York law,[4] "it is well settled that the insured's cooperation is a condition precedent to coverage under an insurance policy and that summary judgment is appropriate where it is determined that an insured's conduct constitutes a breach of the policy's cooperation clause." *Stradford v. Zurich Ins. Co.*, 2002 WL 31819215 at *4; *see also Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d 206, 217 (E.D.N.Y. 2014) ("[v]iolating an

---

[4]  The law is well-settled that in cases arising under diversity jurisdiction, the court must apply federal procedural law and the substantive law of the state in which it sits.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Thus, in this matter, the Court must apply New York's choice of law rules.  *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998) (citing *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 108-09 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)), *cert. denied*, (1999).  In cases involving insurance, New York courts generally look to factors such as "the location of the insured risk, the insured's principal place of business, the residence of the insured, where the policy was issued and delivered, the location of the broker or agent placing the policy, where the premiums were paid, and the insurer's place of business."  *Stradford v. Zurich Ins. Co.*, 2002 WL 31819215, *4 (S.D.N.Y. 2002), *reconsideration denied*, 2003 WL 115224 (S.D.N.Y. 2003).  In this case, the policy does not contain an explicit choice of law provision, although it does contain a conformity with state law provision. (Docket ## 16-3 at 31; 22-11 at 25).  Some courts have treated similar provisions as tantamount to a choice of law provision, *see, e.g.*, *Frank v. Reassure Life Ins. Co.*, 2012 WL 5465027, *5 (S.D.N.Y. 2012), *reconsideration denied*, 2013 WL 541426 (S.D.N.Y.), *aff'd*, 548 F. App'x 706 (2d Cir. 2013), while others have declined to interpret conformity with law provisions as indicating a choice of law, *see, e.g.*, *Insurance Co. of N. Am. v. San Juan Excursions, Inc.*, 2006 WL 2635635, *4 (W.D. Wa. 2006) (collecting cases).  In any event, the conformity with state law provision in this policy, if treated as a choice of law provision, would direct application of New York law, the law of the state where the policy issued.  Further, application of New York choice of law principles applicable in the absence of a choice of law provision also weigh in favor of application of New York law.  Finally, both parties rely upon New York law in their submissions, and they both agreed during oral argument that New York law governed the insurance policy at issue.  Accordingly, I conclude that New York law should govern this dispute.

obligation to cooperate constitutes a material breach of the insurance contract and a defense to indemnification under the policy") (quoting *Koppelman v. Standard Fire Ins. Co.*, 2008 WL 789882, *3 (E.D.N.Y. 2008)).

"The purpose of a cooperation clause in a fire insurance policy is to 'enable the insurer to obtain all knowledge and facts concerning the cause of the fire and the loss involved while the information is fresh in order to protect itself from fraudulent and false claims.'" *Weissberg v. Royal Ins. Co.*, 240 A.D.2d 733, 733-34 (2d Dep't 1997) (quoting *2423 Mermaid Realty Corp. v. New York Prop. Ins. Underwriting Ass'n*, 142 A.D.2d 124, 130 (2d Dep't 1988), *appeal denied*, 74 N.Y.2d 607 (N.Y. 1989)).   Under New York law, the scope of the cooperation clause for a fire insurance contract is prescribed by statute, *see* N.Y. Ins. Law § 3404(e), and "New York courts have made it clear that this duty is a broad one," *Harary v. Allstate Ins. Co.*, 988 F. Supp. 93, 102 (E.D.N.Y. 1997), *aff'd*, 162 F.3d 1147 (2d Cir. 1998), which "is not satisfied by volume" alone, *Richie's Corner, Inc. v. Nat'l Specialty Ins. Co.*, 598 F. Supp. 2d 274, 277 (E.D.N.Y. 2008).   The insured's obligation to cooperate "is much broader than the right of discovery under the [New York Civil Practice Law and Rules, and] [b]y [the policy's] terms the insured promises to render full and prompt assistance to discover the facts surrounding the loss." *Harary v. Allstate Ins. Co.*, 988 F. Supp. at 102 (quoting *Dyno-Bite, Inc. v. Travelers Cos.*, 80 A.D.2d 471, 474 (4th Dep't), *appeal dismissed*, 54 N.Y.2d 1027 (N.Y. 1981)). Cooperation provisions are construed broadly "[i]n the context of suspected arson." *See Richie's Corner, Inc. v. Nat'l Specialty Ins. Co.*, 598 F. Supp. 2d at 276 & n.3 ("[t]he broad duty applicable in suspected arson cases must be distinguished from other property damage cases in which the insured's involvement is not suspected, . . . or claims for personal injuries").   Under such circumstances, the insurer has the right to obtain "all knowledge, and all information as to

other sources and means of knowledge, in regard to the facts, material to their rights to enable them to decide upon their obligations, and to protect them against false claims." *Id.* (quoting *Dyno-Bite, Inc. v. Travelers Cos.*, 80 A.D.2d at 474).

"Materiality . . . is not 'determined by the *ultimate* importance of the information to the insurer but rather its relevance to the investigation at the time it is asked.'" *Id.* (quoting *Harary*, 988 F. Supp. at 104). Thus, "the materiality requirement is satisfied if the false statement [or demanded information] concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183 (2d Cir. 1984). The materiality of a false statement or demanded information to an insurer's investigation may be a question for the jury, *see Pacific Indem. Co. v. Golden*, 985 F.2d 51, 57 (2d Cir. 1993), but where "evidence concerning materiality is clear and substantially uncontradicted, it is for the court to decide as a matter of law[,]" *Kroski v. Long Island Sav. Bank FSB*, 261 A.D.2d 136, 136 (1st Dep't 1999), *see Clerical Apparel of New York, Inc. v. Valley Forge Ins.*, 209 F.R.D. 316, 320 (E.D.N.Y. 2002) ("[s]uch misrepresentations were material as a matter of law, as they impeded [the insurer's] investigation of plaintiff's claim").

In order to disclaim coverage for breach of a cooperation provision, an insurer must demonstrate that:

1)   it acted diligently in seeking to bring about the insured's cooperation,

2)   the efforts employed by the insurer were reasonably calculated to obtain the insured's cooperation, and

3)   the attitude of the insured, after his or her cooperation was sought, was one of willful and avowed obstruction.

*Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d at 217-18 (quoting *Allstate Ins. Co. v. United Int'l Ins. Co.*, 16 A.D.3d 605, 606 (2d Dep't), *leave appeal denied*, 5 N.Y.3d 708 (N.Y. 2005)).

Although an insurer seeking to disclaim coverage for breach of a cooperation clause generally "bears a heavy burden to show that the insured's failure to cooperate was deliberate," the purpose promoted by this burden applies more readily to third-party, as opposed to first-party, insurance claims. *See Wingates, LLC*, 21 F. Supp. 3d at 218 ("[t]he rationale for imposing a heavy burden on the insurer is 'to protect an innocent injured party, who may well have relied upon the fact that the insured had adequate coverage, from being penalized for the imprudence of the insured, over whom he or she has no control'") (quoting *Mount Vernon Fire Ins. Co. v. 170 E. 106th St. Realty Corp.*, 212 A.D.2d 419, 420-21 (1st Dep't), *leave appeal denied*, 86 N.Y.2d 707 (N.Y. 1995)); *Harary*, 988 F. Supp. at 102-03 ("[a] distinction may be drawn, however, between a court's natural reluctance to see an accident victim deprived of his source of payment because a liability carrier claims that its assured has failed to cooperate, and an indemnity carrier denying payment to its insured because the insured failed to cooperate in discovering a possible arson") (quoting *Dyno-Bite, Inc.*, 80 A.D.2d at 476).

An insured's failure to cooperate is deemed willful where the insured's conduct "is indicative of a pattern of non-co-operation [sic] for which no reasonable excuse for noncompliance has been proffered." *Rosenthal v. Prudential Prop. & Cas. Co.*, 928 F.2d 493, 495 (2d Cir. 1991) (quoting *Bulzomi v. New York Cent. Mut. Fire Ins. Co.*, 92 A.D.2d 878, 878 (2d Dep't 1983)). Under New York law, a finding that the insured's failure to cooperate was willful generally extinguishes any right of the insured to be afforded a "last opportunity" to comply with policy conditions. *Id.* at 495 ("the New York Court of Appeals has held . . . that 'in

13

view of the insured's unexcused and willful refusal to comply, there is no reason to deny summary judgment dismissing the complaint unconditionally'[;] . . . [and has] suggest[ed] that a finding of willfulness extinguishes any 'right' to a 'last opportunity'") (quoting *Lentini Bros. Moving & Storage Co. v. New York Prop. Ins. Underwriting Assoc.*, 53 N.Y.2d 835, 836-37 (N.Y. 1981)); *Richie's Corner, Inc.*, 598 F. Supp. 2d at 278 ("[t]he Second Circuit has made it clear that summary judgment is appropriately granted for failure to cooperate in an arson investigation when the insured's action is deemed willful"); *Stradford*, 2002 WL 31819215 at *5 ("it has been consistently held that where the insured's conduct constitutes 'willful' non-cooperation, the insured is not entitled to a 'second chance' to comply with the cooperation clause").  Thus, an insured's belated offer to comply made in response to a motion for summary judgment is generally unavailing.  *Wingates, LLC*, 21 F. Supp. 3d at 220 ("[t]o the extent the [p]laintiffs represent that they will comply with [EUO] requests in the future, '[b]ecause failure to perform a condition precedent is an absolute defense to an insurance claim, subsequent offers to comply are of no consequence'") (quoting *Blakeslee v. Royal Ins. Co. of Am.*, 1995 WL 122724, *7 (S.D.N.Y. 1995)); *Allstate Ins. Co. v. Longwell*, 735 F. Supp. 1187, 1193, 1194-95 (S.D.N.Y. 1990) (granting summary judgment despite insured's offer in his opposition papers to answer questions to which he had previously invoked his Fifth Amendment privilege "because the criminal proceeding [had since] concluded"; insured's "belated offer to answer the questions and to sign the EUO transcript [does not] cure[] the breach of his obligations under the policy . . . as too much time elapsed, defeating the purpose of the cooperation clause").

The law is clear that the failure to attend an EUO constitutes a material breach of an insurance policy and that repeated, unexplained failures to attend warrant a finding of willfulness.  *Rosenthal v. Prudential Prop. & Cas. Co.*, 928 F.2d at 494 ("[t]he insured's

compliance with a request to appear at an EUO is a condition precedent to the insurer's obligation to indemnify[;] . . . [t]he insured's willful failure to appear at an EUO constitutes 'a material breach of the cooperation clause and a defense to an action on the policy'") (quoting *Ausch v. St. Paul Fire & Marine Ins. Co.*, 125 A.D.2d 43, 50 (2d Dep't), *appeal denied*, 70 N.Y.2d 610 (N.Y. 1987)); *Wingates, LLC*, 21 F. Supp. 3d at 218; *Weissberg v. Royal Ins. Co.*, 240 A.D.2d at 734 ("the insureds' willful failure to provide material and relevant documents, or to submit to an [EUO], is a material breach of the policy which bars recovery under the policy"); *Bulzomi v. New York Cent. Mut. Fire Ins. Co.*, 92 A.D.2d at 878 ("[i]t is well established that the failure to comply with the standard policy provision requiring disclosure by way of submission to an [EUO], as often as may be reasonably required, as a condition precedent to performance of the promise to indemnify, constitutes a material breach and is a defense to an action on the policy").  In this case, plaintiffs do not dispute that they refused to answer questions posed by State Farm during their EUOs, but contend that their refusal should not vitiate their policy coverage.  First, they maintain that they substantially complied with the policy's cooperation provision by attending the EUOs and answering the majority of the questions posed to them. (Docket ## 22 at ¶¶ 3-12; 22-15 at 4-5).  A policyholder cannot satisfy his or her duty to cooperate, however, by attending an EUO but refusing to answer material questions.  *Richie's Corner, Inc.*, 598 F. Supp. 2d at 277 (an insured is not entitled to "pick and choose which information to provide"; "[t]he most common example of a willful failure to cooperate is when the insured declines to answer [material] questions"); *Harary*, 988 F. Supp. at 102 ("[t]he insured's obligation to cooperate is not met by 'partial testimony'") (quoting *Dyno-Bite, Inc.*, 80 A.D.2d at 474); *Allstate Ins. Co. v. Longwell*, 735 F. Supp. at 1195 & n.4 (refusal to answer

material questions barred recovery under the policy; "[t]o have substantially cooperated, [the insured] would have had to answer the material questions asked of him").

Second, plaintiffs argue that their failure to cooperate cannot be deemed a willful breach because the information sought by State Farm was not material to its investigation. (Docket ## 22 at ¶ 11; 22-15 at 4-5). I disagree. As an initial matter, the record demonstrates that plaintiffs claimed additional living expenses after both fires arising from their residence in the same house. The record further reveals that plaintiffs had virtually identical rental arrangements with the owner following both fires. The 2010 and 2011 lease agreements contain identical terms, with the exception of a noted security deposit of $1,200 in the 2010 lease. Information relating to the plaintiffs' 2010 claim for additional living expenses was plainly relevant and germane to the insurer's investigation of the validity and reasonableness of the 2011 claim for additional living expenses. *See Longwell*, 734 F. Supp. at 1194-95 ("the materiality requirement is satisfied if [the questions the insured refused to answer] concern[ed] a subject relevant and germane to the insurer's investigation as it was then proceeding").

Moreover, at the time of the November 2012 EUOs, plaintiffs, who had experienced two residential fires within less than two years, were being investigated for submission of false insurance claims relating to the 2010 fire. Indeed, both plaintiffs eventually pleaded guilty to insurance fraud in connection with their 2010 additional living expenses claim – a claim substantially similar to their 2011 additional living expenses claim. On this record, I find that information relating to the 2010 additional living expenses claim was material to the investigation of the 2011 claim for substantially similar expenses, including plaintiffs' intent and motive in making the claim. *See 525 Fulton St. Holding Corp. v. Mission Nat'l Ins. Co.*, 610 F. Supp. 72, 73 (S.D.N.Y. 1985) ("[insurance company] wanted to ascertain whether [insureds]

had a pattern of filing false insurance claims on other premises they owned[;] [t]his historical information was clearly relevant to the most recent claim, particularly in light of the initial reports filed by two independent investigators which pointed to the possibility of foul play"); *Rosenthal v. Allstate Ins. Co.*, 248 A.D.2d 455, 457 (2d Dep't 1998) ("[t]he defendant here alleged fraud and false swearing as an affirmative defense and the plaintiff's prior claims are relevant on the issue of his motive or intent"); *Electrovoice Int'l., Inc. v. Am. Home Assurance Co.*, 213 A.D.2d 272, 273 (1st Dep't 1995) ("[e]vidence of other insurance claims was properly admitted as relevant to the issue of motive raised by the affirmative defenses of fraud and false swearing"); *Dlugosz v. Exch. Mut. Ins. Co.*, 176 A.D.2d 1011, 1013 (3d Dep't 1991) ("[a]n insurer is entitled to information regarding the insured's financial status . . . and the insured's prior insurance losses"); *Dlugosz v. New York Cent. Mut. Fire Ins. Co.*, 132 A.D.2d 903, 904 (3d Dep't) (evidence of insured's prior claims was relevant where insurer alleged fraud and false swearing; "evidence of other similar claims was relevant to the issue of plaintiff's intent or motive raised by the affirmative defense"), *appeal denied*, 70 N.Y.2d 612 (N.Y. 1987); *Rickert v. Travelers Ins. Co.*, 159 A.D.2d 758, 760 (3d Dep't) ("plaintiff's loss history was clearly material to [the insurer's] investigation of his claim"), *appeal denied*, 76 N.Y.2d 701 (N.Y. 1990).

Further, although the parties dispute whether the cause of the 2011 fire was incendiary, no dispute exists that State Farm possessed information during its investigation to suggest an incendiary source. Courts routinely find that information concerning an insured's credibility or motive is material where the insurer reasonably suspects arson or fraud in connection with the claim. *See Harary*, 988 F. Supp. at 104 ("[i]n view of the fact that direct proof of arson is seldom available .... [i]nformation gleaned from the tax returns of an individual insured or the officers of a corporate insured can be of crucial significance") (quoting *2423*

*Mermaid Realty Corp. v. New York Prop. Ins. Underwriting Ass'n*, 142 A.D.2d at 130);

*Blakeslee v. Royal Ins. Co. of Am.*, 1995 WL 122724 at *6 ("[t]he insured's obligation to

produce financial records in compliance with a cooperation clause is particularly acute in a case

of suspected arson, where financial motive looms large"); *Longwell*, 735 F. Supp. at 1195 ("[the

insurer] had reason to believe that [the insured] falsified his sworn statement of proof of loss in

order to inflate his claim, thus adding to the materiality of the questions propounded but

unanswered"); *Pioneer Food Stores Coop., Inc. v. Fed. Ins. Co.*, 169 A.D.2d 430, 431 (1st Dep't

1991) ("[t]he insured's bank statements for the year prior to the fire were relevant and material to

the insurer's investigation of the fire which was determined to have had an incendiary source");

*Maurice v. Allstate Ins. Co.*, 173 A.D.2d 793, 794 (2d Dep't 1991) ("where there were suspicious

circumstances surrounding the burglary of the plaintiffs' home, the plaintiffs' possible motive in

arranging the burglary renders their financial situation material and relevant"); *2423 Mermaid

Realty Corp.*, 142 A.D.2d at 129-30 ("[f]rom the time the [insurer] was initially apprised of the

incendiary origin of the fire, it had a bonafide purpose in investigating the legitimacy of the

[insureds'] claim[;] . . . [w]here, as here, the fire from which the subject claim has emanated has

been found to be incendiary in nature, the need for the insurer to conduct its investigation into all

relevant and material areas of inquiry is obvious"); *Averbuch v. Home Ins. Co.*, 114 A.D.2d 827,

828 (2d Dep't 1985) (questions relating to insured's financial status at time of fires were

"patently material" where preliminary investigation disclosed that fires were incendiary in

nature).

        Judged under this relevant authority, counsel's questions to plaintiffs during their

November 2012 EUOs, which occurred at the same time as a criminal investigation was being

conducted into whether they had submitted fraudulent claims in connection with the 2010 fire,[5] relating to plaintiffs' earlier similar claim for additional living expenses were material to State Farm's investigation of the validity of their current insurance claim and were likely to bear on plaintiffs' credibility. *Richie's Corner, Inc.*, 598 F. Supp. 2d at 278 ("I cannot see how the information of whether plaintiff's principal has lied under oath could be deemed immaterial to defendant's arson investigation; [w]e instruct juries in virtually every case that they may consider *falsus in uno, falsus in omnibus*; there is no reason why the insurance company should be deprived of information to make that same determination in the context of an arson investigation"); *Dlugosz v. New York Cent. Mut. Fire Ins. Co.*, 132 A.D.2d at 904 (evidence that plaintiff had filed other, similar claims was relevant where "defendant alleged as an affirmative defense that plaintiff was guilty of fraud and false swearing in connection with the claim[;] . . . evidence of other similar claims was relevant to the issue of plaintiff's intent or motive raised by the affirmative defense").

Having concluded that information relating to the 2010 additional living expenses claim was material to State Farm's investigation of the 2011 claim, I turn to whether plaintiffs' refusals to answer questions relating to that claim were willful. The record demonstrates that counsel for State Farm posed questions to both Steven and Melissa, which their counsel directed them not to answer on the grounds that the questions did not seek relevant information and concerned the subject of a pending criminal investigation. Counsel for State Farm articulated his view that the questions sought relevant and material information and warned that plaintiffs' failure to answer the questions could result in the denial of the claim. Despite this warning,

---

[5] During the November 2012 EUOs, plaintiffs testified that they were under investigation in connection with the 2010 fire. (Docket # 16-7 at 29, 31). On April 15, 2013, Melissa Eagley was indicted on criminal charges of arson, insurance fraud, and grand larceny in connection with both the 2010 and 2011 fires. (Docket ## 16-12 at ¶ 10; 22-14 at ¶ 10). The reasonable inference is that Melissa Eagley was under criminal investigation relating to the 2011 fire prior to the indictment, although the exact timing of that investigation is not clear from the record.

plaintiffs refused to answer the questions.  Defense counsel's warning belies any suggestion that plaintiffs' refusal to answer resulted from confusion or inadvertence, rather than considered and deliberate willfulness.  *See*, *e.g.*, *Wingates, LLC*, 21 F. Supp. 3d at 219 (finding of willfulness appropriate, "particularly in light of [insurance adjustor's] testimony that he advised [insured] that the failure to comply with the EUO requests would run afoul of the terms of the Policy"); *Richie's Corner, Inc.*, 598 F. Supp. 2d at 278 ("defendant's attorney . . . urged plaintiff to reconsider its position and he warned of the consequences of non-cooperation several times; [u]nder these circumstances, no reasonable jury could find that plaintiff's refusal [to answer questions] was anything other than willful"); *Blakeslee*, 1995 WL 122724 at *6 (insureds' conduct was willful where "[the insureds] greeted each opportunity to comply with persistent refusal, despite a clear warning of the consequences and ample time to discern their obligations"); *Evans v. Int'l Ins. Co.*, 168 A.D.2d 374, 376 (1st Dep't 1990) (granting summary judgment where "[t]he plaintiffs were warned repeatedly that their refusal to provide material documentation might lead to a disclaimer under the policy by the defendant"); *Pizzirusso v. Allstate Ins. Co.*, 143 A.D.2d 340, 340-41 (2d Dep't) (granting summary judgment where "defendant's attorney advised the plaintiff and her attorney, prior to their leaving the examination, that the defendant considered the questions to be material and relevant so that a refusal to answer could result in the loss of the plaintiff's rights under the insurance policy"), *appeal dismissed*, 73 N.Y. 2d 808 (N.Y. 1988); *Averbuch v. Home Ins. Co.*, 114 A.D.2d at 828 (granting summary judgment where "[d]espite being warned by defendant's attorney that a refusal to answer material and relevant questions might lead to a disclaimer under the policy by the defendant, plaintiff refused to answer several patently material questions posed by defendant's counsel").

The fact that plaintiffs' refusal was based upon the Fifth Amendment privilege against self-incrimination and the advice of counsel does not demonstrate lack of willfulness. *See*, *e.g.*, *Wingates, LLC*, 21 F. Supp. 3d at 219 ("that the [p]laintiffs may have failed to timely cooperate with [the insurer's] investigation upon the advice of counsel does not excuse the breach"); *Blakeslee*, 1995 WL 122724 at *6 ("[insured] cannot avoid summary judgment simply because he relied on his father-attorney's mistaken opinion that [the insurer] was not entitled to certain documents[;] [r]eliance on erroneous legal advice does not constitute a reasonable excuse or establish that the insured's conduct was not willful"); *Longwell*, 735 F. Supp. at 1193 ("[t]here is a line of cases in New York specifically holding that an insured may not refuse on Fifth Amendment grounds to submit to an EUO without breaching the cooperation clause in his contract") (collecting cases); *Evans v. Int'l Ins. Co.*, 168 A.D.2d at 376 ("[t]hat plaintiffs failed to timely cooperate with the defendant's investigation upon the advice of counsel does not excuse the breach of their obligations"); *Dyno-Bite, Inc.*, 80 A.D.2d at 475, 476 ("[i]t has been held that an individual may not refuse to be examined on Fifth Amendment grounds without voiding his fire insurance"; "[a] fire insured, however, controls his own fate and . . . an individual insured . . . may [not] use the Fifth Amendment privilege to frustrate the fire insurers' defenses to their action").

Plaintiffs' counsel's colloquy with defendant's counsel at Steven's examination makes clear that his direction to his clients not to answer questions about the 2010 claim for additional living expenses, which State Farm had paid, was grounded in an attempt to ensure that they did not incriminate themselves. At the time of the EUOs, both plaintiffs had been arrested and were under criminal investigation for fraud in connection with their 2010 claim. In fact, following their EUOs, plaintiffs did not promptly sign their transcripts and, more significantly,

never returned the subscriptions to State Farm, instead producing them for the first time in response to the pending summary judgment motion. *See Pioneer Food Stores Coop, Inc. v. Fed. Ins. Co.*, 169 A.D.2d at 431 (dismissal without opportunity to cure breach of cooperation provision warranted where insured failed to provide information; "[d]ismissal is also warranted by the insured's failure to subscribe and return the transcript of the [EUO]").  Of course, the criminal investigation and prosecution was ongoing during State Farm's pre-disclaimer investigation; it had concluded by the time plaintiffs responded to the pending motion.  (Docket # 20).  The reasonable inference from this record is that plaintiffs deliberately decided to invoke and rely upon their constitutional right against self-incrimination during the period that the criminal proceedings were ongoing.  Notably, they have submitted no affidavits affirming or suggesting that they were mistaken about either the basis or the ramifications of counsel's advice and directions not to answer or that they would have cured the non-compliance during State Farm's investigation notwithstanding the ongoing criminal investigation.  There is no reasonable basis to infer that further demands or entreaties by State Farm to secure plaintiffs' testimony prior to the disclaimer would have been any more successful than its counsel's warning at the November 2012 EUOs.  Any offer to cure the non-compliance now, over two years after the EUOs and eighteen months after the disclaimer, is far too late and would defeat the purpose of the cooperation provision. *See Longwell*, 735 F. Supp. at 1195 ("[insured] waited nearly nine months before offering to answer the disputed questions and more than fourteen months after the fire[;] [a]ccordingly, we find as a matter of law that defendant cannot cure his default by his belated offer to answer the questions and his belated signing and return of the transcript").

On this record, I find that plaintiffs' failure to answer the material questions about their prior claim for additional living expenses was a willful breach of their duty to cooperate

under the insurance policy and vitiates their claim for coverage under the policy. *See Richie's Corner, Inc.*, 598 F. Supp. 2d at 278 ("no reasonable jury could find that plaintiff's refusal to cooperate [by answering material questions at EUO] was anything other than willful"); *Longwell*, 735 F. Supp. at 1193 (repeated refusal to answer material questions at EUO based upon Fifth Amendment breached cooperation provision of policy); *525 Fulton St. Holding Corp. v. Mission Nat'l Ins. Co.*, 610 F. Supp. at 74 (insured's failure to provide prior claim information vitiated policy coverage); *Johnson v. Allstate Ins. Co.*, 197 A.D.2d 672, 672 (2d Dep't 1993) (summary judgment dismissing complaint properly granted where record demonstrated that "plaintiff engaged in a pattern of willful noncooperation in the investigation of his burglary claim, as evidenced by his refusal to answer numerous relevant questions during his [EUO]"), *leave appeal denied*, 82 N.Y.2d 664 (N.Y. 1994); *Dlugosz v. Exch. Mut. Ins. Co.*, 176 A.D.2d at 1013 (summary judgment dismissing complaint properly granted where record demonstrated that insured failed to answer material and relevant questions during EUO concerning prior losses); *Maurice v. Allstate Ins. Co.*, 173 A.D.2d at 794 ("[b]ecause the plaintiff . . . refused to answer material and relevant questions at the [EUO], he materially breached a substantial condition of the insurance policy[;] [t]hus [the insurer] is entitled to summary judgment dismissing plaintiffs' complaint"); *Evans*, 168 A.D.2d at 374-75 (insured's failure to answer questions at EUO and produce documents relating to prior claims and financial status warranted grant of summary judgment dismissing claim); *Rickert v. Travelers Ins. Co.*, 159 A.D.2d at 760 ("plaintiff's willful failure to make a full disclosure [of prior claim history] at the [EUO] invalidated the insurance policy"); *Pizzirusso v. Allstate Ins. Co.*, 143 A.D.2d at 341 ("plaintiff's obligation of cooperation was not met by her extremely limited testimony at the examination nor was there any indication that she would cooperate as required in the near future[;] . . . [t]he plaintiff's willful refusal to

answer material and relevant questions constituted a material breach of substantial conditions of

the insurance policy"); *Averbuch*, 114 A.D.2d at 829 ("plaintiff's willful refusal to answer

material and relevant questions on his [EUO] by defendant and to supply material and relevant

documentation constituted a breach of substantial conditions of the policy").

      During oral argument, plaintiffs' counsel urged the Court to deny summary

judgment on the grounds that plaintiffs substantially complied with their cooperation obligations,

thereby demonstrating their lack of willfulness and entitling them to a final opportunity to

comply.  Plaintiffs cited four cases in support of this argument, each of which held that the

insured was entitled to an additional opportunity to comply with the policy's cooperation

provision.  *See C-Suzanne Beauty Salon, Ltd. v. Gen. Ins. Co. of Am.*, 574 F.2d 106, 111 (2d Cir.

1978); *Marmorato v. Allstate Ins. Co.*, 226 A.D.2d 156, 156 (1st Dep't 1996); *Yerushalmi v.*

*Hartford Accident & Indem. Co*, 158 A.D.2d 407, 407 (1st Dep't 1990); *Pogo Holding Corp. v.*

*New York Prop. Ins. Underwriting Ass'n*, 73 A.D.2d 605, 606 (2d Dep't 1979).  In the first, the

Second Circuit held that the insurance company failed to establish a willful breach of the

cooperation provision because the insurer had failed to insist that the insureds attend an EUO,

thus warranting a denial of the insurer's motion for summary judgment.  *C-Suzanne Beauty*

*Salon, Ltd. v. Gen Ins. Co. of Am.*, 574 F.2d at 111.  Unlike that case, the record here

demonstrates that plaintiffs' refusal to answer questions about the prior claim for additional

living expenses was willful.

      The remaining three cases are premised upon a line of New York authority which

has been explicitly called into question by subsequent caselaw.  As the Second Circuit has

recognized, New York courts "have recently retreated from affording an insured a 'last

opportunity' when the insured's refusal to cooperate is willful[,]" *Rosenthal*, 928 F.2d at 495

(collecting cases), and the weight of authority applying New York law dictates against affording

a "last opportunity" where a finding of willfulness has been made. *See, e.g.*, *Harary*, 988

F. Supp. at 106 ("recent case law is clear that it is an error of law to require an insurer to provide

the insured one more chance to provide material information when the insured's prior conduct

demonstrates a willful failure to comply"); *Stradford*, 2002 WL 31819215 at *5 & n.6 ("it has

been consistently held that where the insured's conduct constitutes 'willful' non-cooperation, the

insured is not entitled to a 'second chance' to comply with the cooperation clause"; "as a matter

of public policy, we find it impermissible to allow an insured to willfully fail to comply with the

insurer's demands and then to be afforded a 'second chance' to comply once the evidence has

become stale and the insurance company has been forced to spend considerable effort preparing

to litigate the issue of the insured's non-cooperation"); *Blakeslee*, 1995 WL 122724 at *7

("[b]ecause failure to perform a condition precedent is an absolute defense to an insurance claim,

subsequent offers to comply are of no consequence"); *Richie's Corner, Inc.*, 598 F. Supp. 2d at

278 ("[t]he Second Circuit has made it clear that summary judgment is appropriately granted for

failure to cooperate in an arson investigation when the insured's action is deemed willful");

*Lentini Bros. Moving & Storage Co. v. New York Prop. Ins. Underwriting Ass'n*, 53 N.Y.2d at

837 (rejecting "[t]he insured's suggestion that dismissal of the complaint should have been

conditional"; "[i]n view of the insured's unexcused and willful refusal to comply, there is no

reason to deny summary judgment dismissing the complaint unconditionally"); *Evans*, 168

A.D.2d at 376 (declining to follow *Pogo Holding Corp.* and reversing trial court's conditional

denial of summary judgment; "[p]laintiffs' continued failure, without reasonable explanation or

excuse, to provide the requested information constituted a material breach of the policy

precluding recovery by the plaintiffs"); *Silver v. Gen. Accident Ins. Co.*, 203 A.D.2d 354, 355

(2d Dep't 1994) ("the Supreme Court did not err in failing to make the dismissal conditional

upon [insured's] failing to appear for an examination under oath"); *Johnson v. Allstate Ins. Co.*,

197 A.D.2d at 672 (reversing denial of summary judgment motion without prejudice to renewal

in the event that the plaintiff failed to submit to an EUO within thirty days; "plaintiff's breach of

the policy was not cured by his belated expression of a willingness to cooperate which was made

more than two years after the loss and only in response to the insurer's motion for summary

judgment[;] . . . [u]nder these circumstances, we find that the complaint should be dismissed");

*Pizzirusso*, 143 A.D.2d at 341 ("owing to the plaintiff's unexcused and willful refusal to fulfill

her obligations under the policy [by answering material and relevant questions at EUO], that

branch of the defendant's motion which was for summary judgment dismissing the complaint

should have been granted unconditionally"); *Averbuch*, 114 A.D.2d at 829 (same).  Accordingly,

because plaintiffs' refusal to answer questions at the EUOs was a willful breach of the policy's

cooperation provision, they should not be afforded a final opportunity to comply at this late date.

### 2.   <u>Timeliness of the Disclaimer</u>

I turn next to plaintiffs' argument that even if their conduct at the November 2012

EUOs breached the policy's cooperation provision, State Farm's disclaimer of coverage based

upon their failure to cooperate was untimely.  (Docket ## 22 at ¶¶ 42-49; 22-15 at 3-4).

According to plaintiffs, they are not required by New York law to demonstrate prejudice as a

result of the untimely disclaimer.  (*Id.*).

As an initial matter, the cases cited by plaintiffs in support of their position that

State Farm's disclaimer was untimely rely principally upon Section 3420(d) of the New York

Insurance Law, which requires an insurer to provide written notice of any disclaimer of coverage

for claims arising from a death or bodily injury as soon as reasonably possible.[6]  *See* N.Y. Ins.

Law § 3420(d)(2).  Pursuant to Section 3420(d), an untimely disclaimer by an insurer will effect

a waiver by the insurer "regardless of whether the insured is able to show prejudice resulting

from the delay."  *Jewish Cmty. Ctr. of Staten Island v. Trumbull Ins. Co.*, 957 F. Supp. 2d 215,

237 (E.D.N.Y. 2013) (quoting *Dependable Janitorial Servs. Ins. v. Transcon. Ins. Co.*, 212

A.D.2d 946, 947 (3d Dep't), *leave appeal denied*, 85 N.Y.2d 811 (N.Y. 1995)).  Section 3420(d)

does not, however, apply to property damage claims such as the one at issue in this case.  *See*

*Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*, 844 F. Supp. 2d 286, 309 (N.D.N.Y. 2012)

("[t]his matter does not involve a claim for death or bodily injury; it involves a claim for

property damage . . . [t]herefore the strict provisions of section 3420(d) do not apply, and

plaintiff's failure to promptly disclaim does not automatically preclude it from relying upon

coverage defenses").

      "Although Section 3420(d)(2) does not apply to claims for property damage,

disclaimers under those circumstances may nonetheless be waived pursuant to common law

equitable estoppel, which applies when an insurer 'unreasonably delays in disclaiming

coverage,' as 'judged from the time that the insurer is aware of sufficient facts to issue a

disclaimer.'"  *U.S. Underwriters Ins. Co. v. Landau*, 679 F. Supp. 2d 330, 342 (E.D.N.Y.)

(quoting *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002)),

*reconsidered on other grounds*, 2010 WL 2517196 (E.D.N.Y. 2010).  To justify application of

the estoppel doctrine, plaintiffs must demonstrate both that the delay was unreasonable and that

they were prejudiced as a result of the delay.  *See Lumbermens Mut. Cas. Co. v. Flow Int'l*

---

[6] Plaintiffs also cite two cases decided by the New York Court of Appeals to suggest that New York "has shifted away from the no-prejudice rule."  (Docket # 22-15 at 3-4 (citing *Matter of Brandon v. Nationwide Mut. Ins.*, 97 N.Y.2d 491 (2002), and *Rekemeyer v. State Farm Mut. Auto.*, 4 N.Y. 3d 468 (2005))).  Both cases are inapposite; they address whether an insurer is required to demonstrate prejudice when seeking to disclaim coverage on the grounds that the insured failed to comply with the notice of claim provisions of a supplementary uninsured/underinsured motorists policy.

27

*Corp.*, 844 F. Supp. 2d at 304 ("estoppel requires a showing of prejudice to the insured")

(quoting *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002));

*U.S. Underwriters Ins. Co. v. Landau*, 679 F. Supp. 2d at 344 ("[e]ven assuming *arguendo* that

the disclaimers for the property damage claims were unreasonably delayed as a matter of law, to

prove equitable estoppel, unlike waiver under  3420(d), . . . defendants still would have to show

that they relied on [the insurer's] coverage to their detriment and were prejudiced by its delay in

disclaiming"); *City of Utica, N.Y. v. Genesee Mgmt., Inc.*, 934 F. Supp. 510, 523 (N.D.N.Y.

1996) ("the insurer may be equitably estopped from asserting the non-compliance defense if the

insured has been prejudiced by the insurer's failure to timely raise the defense"); *Precision Auto*

*Accessories, Inc. v. Utica First Ins. Co.*, 52 A.D.3d 1198, 1202-03 (4th Dep't) ("we conclude

that defendant is not estopped from rescinding the policy as void ab initio inasmuch as, contrary

to plaintiff's contention, plaintiff failed to demonstrate any prejudice based on defendant's

alleged delay in disclaiming coverage"), *leave appeal denied*, 11 N.Y.3d 709 (N.Y. 2008).

      In this case, even assuming that State Farm's disclaimer was unreasonably

delayed, plaintiffs have failed to allege that they were prejudiced, much less demonstrated that

material issues of fact exist as to whether they were prejudiced by the timing of State Farm's

disclaimer.  Having concluded that plaintiffs' failure to answer questions at the EUOs was a

breach of the policy's cooperation provision and that they failed to demonstrate an issue of

material fact as to whether the timing of State Farm's disclaimer prejudiced their rights, I

conclude that State Farm is entitled to summary judgment dismissing the complaint.[7]

---

[7] I decline to address State Farm's alternative arguments relating to plaintiffs' alleged failures to produce their expert reports and to timely submit adequate proofs of loss. *See Wingates, LLC*, 21 F. Supp. 3d at 220 ("[h]aving dismissed the complaint, the [c]ourt declines to address [the insurer's] alternative bases for summary judgment on the breach of contract claim – namely, that the [p]laintiffs allegedly made material misrepresentations in their Sworn Proofs and that they cannot show damages").

## <u>CONCLUSION</u>

For the foregoing reasons, State Farm's motion for summary judgment (**Docket # 16**) is **GRANTED**, and plaintiffs' complaint (Docket # 1-1) is dismissed with prejudice.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
_____
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       September 29, 2015